UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMITILA PELAEZ RALON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-03344-JCS<br><br>**ORDER RE:**<br><br>1) **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>2) **PLAINTIFF'S RESPONSE AND MOTION FOR DISCOVERY**<br>3) **PLAINTIFF'S MOTION TO APPOINT COUNSEL**<br>4) **PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br>5) **PLAINTIFF'S MOTION TO FINAL BENCH TRIAL**<br><br>Re: Dkt. Nos. 92, 93, 97, 98, 109 |

## I.　INTRODUCTION

Presently before the Court are Defendants' Motion for Summary Judgment (dkt. no. 92 ("Summary Judgment Motion")), two motions for discovery filed by Plaintiff (dkt. nos. 93, 97 ("Discovery Motions")), a motion for appointment of counsel (dkt. no. 97), and a "Motion to Final Bench Trial" (dkt. no. 109 ("Bench Trial Motion")). For the reasons set forth below, the Court DENIES Plaintiff's motion for appointment of counsel, Discovery Motions and Bench Trial Motion. The Court GRANTS Defendants' Summary Judgment Motion.[1]

## II.　MOTION FOR APPOINTMENT OF COUNSEL

This is Plaintiff's fourth request for appointment of counsel. *See* dkt. nos. 3, 45, 60, 97. In

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c). Plaintiff has brought two motions seeking to have the case reassigned to a district judge. Dkt. nos. 100, 103. Those motions were referred to district judges for determination and have been denied. Dkt. nos. 102, 111.

1   its orders denying Plaintiff's previous requests, the court has explained that there is no right to
2   counsel in a civil case and that the Court appoints counsel in civil cases only where a party has
3   established both that they are indigent and that exceptional circumstances warrant appointment of
4   counsel. *See* dkt. no. 63. The Court has denied Plaintiff's previous requests on the basis that it is
5   not apparent that there are exceptional circumstances that warrant appointment of counsel in this
6   case. Most recently, on February 20, 2025, the Court denied Plaintiff's request because there had
7   been no developments in the case that changed the Court's conclusion in this respect since it
8   issued its previous order denying Plaintiff's request. Dkt. no. 78. The Court further ordered that
9   Plaintiff could not renew her request for appointment of counsel unless the case survived
10  Defendant's summary judgment motion. Dkt. no. 78. Although the Court has not yet ruled on
11  Defendants' Summary Judgment Motion, Plaintiff has renewed her request. Because Plaintiff's
12  renewed request for appointment of counsel violates the Court's previous order – and because the
13  Court again finds that there have been no developments in the case that change its conclusion that
14  Plaintiff has not demonstrated the existence of exceptional circumstances that warrant
15  appointment of counsel -- the motion is DENIED.

## III.  DISCOVERY MOTIONS

In the Discovery Motions, Plaintiff appears to ask the Court to compel Kaiser to: 1) produce two videotapes that she believes recorded relevant events at Kaiser's facility on March 27, 2023. and May 03, 2023; 2) produce Dr. Ranna Tabrizi and possibly others for depositions; and 3) respond to other discovery requests that Plaintiff contends were "blocked" by Kaiser. Dkt. no. 93 at ECF pp. 1-2; dkt. no. 98 generally.

The Court previously addressed the first two requests and found that further discovery as to those materials was not warranted. In particular, in its April 4, 2025 Order, the Court denied Plaintiff's request for leave to extend the discovery cut-off and explained why Plaintiff's request to pursue further discovery to obtain the same two videotapes and to take additional depositions failed:

> As best the Court can discern, Plaintiff would like additional time to obtain further discovery from Kaiser, including security camera footage she believes Kaiser has refused to turn over and depositions.

2

> Almost a year ago, Kaiser provided discovery responses stating that "[a]fter a diligent search and reasonable inquiry responding parties are not aware of any video footage relating to the claims raised in the Complaint." Likar Decl., Ex. C (dkt. no. 88-1). The Court quashed Plaintiff's deposition subpoenas, which were procedurally defective in numerous respects, on December 13, 2024 and gave Plaintiff until December 20, 2024 to meet and confer with Kaiser about scheduling and to issue corrected deposition subpoenas. There is nothing in the record suggesting that Plaintiff met and conferred with Kaiser or issued deposition subpoenas that were in compliance with the Federal Rules of Civil Procedure or this Court's Local Rules.
>
> The formal close of fact discovery set by the Court was December 31, 2024. Dkt. no. 52. However, the Court extended the deadline as to certain discovery due to Plaintiff's failure to respond to certain discovery requests by Kaiser and difficulties in obtaining the depositions of Plaintiff and Mr. Villalta. Dkt. nos. 65, 67. Thus, the fact discovery cut-off was, at the latest, February 12, 2025, when the last of these extended deadlines had passed. Pursuant to Civil Local Rule 37-3, "no discovery-related motions may be filed more than 7 days after the discovery cut-off … [and] [d]iscovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown." The instant Motion was filed on March 31, 2025, more than a month after the fact discovery cut-off.
>
> Plaintiff has not demonstrated good cause to extend the fact discovery cut-off in order to pursue additional fact discovery or the deadline to file her motion for summary judgment. She offers no evidence that controverts Kaiser's representation that it has searched for and found no videos or any plausible reason to question that representation. She also offers no explanation for her delay of almost of year, until well after the close of fact discovery, to pursue that issue. Nor does she offer any explanation for her failure to promptly issue corrected deposition subpoenas for any Kaiser witnesses she sought to depose following the Court's December 13, 2024 order. The Court notes that in that Order, it explained the defects in the previous subpoenas so that Plaintiff could correct them.

Dkt. no. 89 at pp. 1-2.

In the Discovery Motions, Plaintiff again fails to offer any evidence suggesting that Kaiser's representations about the existence of the videotapes Plaintiff seeks are untrue; nor has she explained why she did not comply with the Court's December 13, 2024 Order with respect to the improperly noticed depositions, even though the Court provided clear instructions in that Order so that she could cure the defects in her previous deposition subpoenas. Finally, Plaintiff has not identified any other specific discovery materials that Kaiser has "blocked." Therefore, the Discovery Motions are DENIED.

3

## IV. BENCH TRIAL MOTION

The Court is unable to discern what relief Plaintiff seeks in her Bench Trial Motion. To the extent that Plaintiff seeks to assert new factual allegations or theories in support of her pending Title VI claim, the Court disregards them as improper. The deadline to amend her complaint has long passed and Kaiser's summary judgment motion is fully briefed. The Bench Trial Motion is DENIED.

## V. SUMMARY JUDGMENT MOTION

### A. Factual Background[2]

This case arises from a series of scheduled appointments at Kaiser Permanente San Rafael Medical Center ("the facility"). On March 14, 2023, Plaintiff was referred to the breast clinic for surgery to remove a breast mass. Declaration of Chasity Aguiar ("Aguiar Decl."), Ex. A, KFH.PR.001237. On March 22, 2023, Plaintiff met with Dr. Ranna Tabrizi for an evaluation and spoke with Dr. Tabrizi later that same day to discuss imaging findings and schedule a breast lumpectomy procedure. *Id.,* Ex. A, KFH.PR.001282, KFH.PR.001285, KFH.PR.001298. Interpreters were used for both appointments. *Id.* Dr. Tabrizi performed the breast lumpectomy surgery on March 27, 2023. *Id.,* Ex. A, KFH.PR.001339. Plaintiff testified at her deposition that she had no problems with building security at the facility and no complaints about Dr. Tabrizi associated with the March 27 surgery. Declaration of Ondrej Likar ("Likar Decl."), Ex. C (Deposition of Domitila Ralon, December 23, 2024 ("Ralon Depo.") at 31.

On April 7, 2023, Plaintiff returned for a post-operative appointment with Dr. Tabrizi, who recommended a margin excision to prevent recurrence of Plaintiff's tumor and scheduled an additional surgery for May 3, 2023. Aguiar Decl., Ex. A, KFH.PR.001374. An interpreter was present at that appointment as well. *Id.* Plaintiff testified that she thought Dr. Tabrizi was going to "take it all out" in the first surgery and that Dr. Tabrizi told her that she was "going to cure [her]"; Plaintiff thought that Dr. Tabrizi "only took a percentage" "because she wanted to charge twice." Likar Decl., Ex. C (Ralon Depo.) at 39. Plaintiff testified that Dr. Tabrizi did not say

---

[2] The facts set forth below are undisputed unless otherwise stated.

4

anything that made her believe this, however. *Id.*

On May 3, 2023, Plaintiff was driven to the surgery by her friend Selomi Villalta, who accompanied her into the facility and left her in the ER waiting area while he went to another location to complete intake paperwork. Likar Decl., Ex. C (Ralon Depo.) at 48, 51. According to Ralon, while in the ER waiting area an African-American ER nurse began speaking to her in English but she did not understand what was being said. *Id.* at 52-53. Someone told her the ER nurse was asking her to leave. *Id.* at 53, 56. At that point, Plaintiff testified, the ER Nurse, a manager and a security guard took her into the hallway and Villata returned. *Id.* According to Plaintiff, the nurse, the manager and the security guard "didn't let [Plaintiff and Villalta] come in" to the ER waiting area; the security guard then took her and Villalta "all the way out to the street." *Id.*; *see also* Likar Decl., Ex. D (Villalta Depo.) at 53-55. Plaintiff testified that the ER nurse "kicked [her] out of there maybe because [she is] a Latina. Everyone else there was American." *Id.* at 48.

Plaintiff testified that she did not know why she was asked to leave because she and Villalta "didn't do anything" and "didn't cause any problems. Likar Decl., Ex. C (Ralon Depo.) at 53. She also testified that Dr. Tabrizi ordered that she and Villalta be asked to leave. *Id.* at 71 ("She was the one that ordered them to kick us out."). She testified that Dr. Tabrizi was not present at the time they were asked to leave but that she must have been the one who ordered that they be evicted from the building because Dr. Tabrizi's notes from that day contained "lies" and she knew "everything" because she was going to perform surgery on Plaintiff that day. *Id.* at 71-72. Villalta testified that he "never saw" Dr. Tabrizi that day. Likar Decl., Ex. D (Villalta Depo.) at 55. Like Plaintiff, he testified at his deposition that he did not know why he and Plaintiff were asked to leave the facility. Likar Decl., Ex. D (Villalta Depo.) at 52-53. Both Plaintiff and Villalta testified that the ER nursed laughed as Plaintiff was told to leave the waiting room. *Id.* at 52; Likar Decl., Ex. C (Ralon Depo.) at 71 ("the black woman was laughing that we had been kicked out").

Dr. Tabrizi's notes from May 3, 2023, the truth of which Plaintiff disputes, state as follows:

5

> Domitila was scheduled to have surgery with me today. She had arrived accompanied by Selomi (her son according to him). However her case was cancelled after she left following a confrontation with Selomi and our peri-op staff. I called and spoke with Selomi. He told me that "something happened today" but he would not get into the details. Previously he had said that he is her son, but under demographics it says friend. Using an interpreter, I asked to speak with Domitila, to verify his relation to her, but she never answered the question. She and Selomi were on the phone together. Despite me asking him to allow me to speak with her alone, he kept interjecting. When I asked Domitila to tell me what happened, Selomi was telling her what to say. When I said, I want to speak only with Domitila, he hung up. Will send patient a certified letter requesting her to contact my office and to set up an appointment without Selomi there given his hostile behavior towards our OR staff and myself today.
> She needs a re-excision to reduce the recurrence of her borderline phyllodes tumor and needs to have her margin reexcision operation rescheduled.

Aguiar Decl., Ex. A, KFH.PR.001435.

On the same day, a Kaiser nurse sent Plaintiff a letter, in Spanish, stating:

> Please contact my office to set up an appointment without Selomi present. You need a re-excision to reduce the recurrence of your borderline phyllodes tumor and need to have your margin re-excision operation rescheduled. Please contact Kaiser General Surgery Department at 415-444-2950 to schedule an appointment with Dr Tabrizi
>
> Thank You
>
> Kaiser General Surgery Dept.

*Id.* KFH.PR.001433-34.

An email was sent to Plaintiff on May 11, 2023, in Spanish and English, stating:

> I am Dr. Tabrizi's MA I call you and I could not leave you a voicemail because the mailbox is full I was call you to let you that you have an appointment with Dr. Tabrizi on 5/16/23 11:30 am to talk and reschedule the appointment for your surgery, you can come to the appointment accompanied by someone other than Mr. Selomi Villalta since he cannot enter the hospital building, you can bring someone else but if you do not have anyone else Mr. Selomi can bring you and leave you at the entrance of the building and you will come in alone to your visit with Dr. Tabrizi, also Dr. Tabrizi mentioned that if you like this appointment it could be by phone but let us know. Please call us back at 415-444-2950 to explain better.

*Id.*, KFH.PR.001453. Notes in Plaintiff's chart reflect that she missed the May 16, 2023 appointment. *Id.* KFH.PR.001454.

Plaintiff testified at her deposition that after she and Villalta left the facility, on May 3,

2023, Dr. Tabrizi called her (using Villalta's telephone number as Plaintiff listed Villalta's number as her own contact number with Kaiser) but that she did not speak to the doctor. Likar Decl., Ex. C (Ralon Depo.) at 75-76. According to Plaintiff. Dr. Tabrizi hung up because she did not want to speak to Villalta. *Id.* Villalta testified that Dr. Tabrizi called him trying to reach Plaintiff and that he spoke to her from his car, parked outside a restaurant, while Plaintiff was inside. Likar Decl., Ex. D (Villalta Depo.) at 56. Villalta testified that Dr. Tabrizi asked Plaintiff to return to the hospital for the scheduled surgery and that he "went back and told Miss Domitila that [he] had just spoken on the phone with Dr. Tabrizi and told her that Dr. Tabrizi said please for her to come back to the hospital." *Id.* at 57. According to Villalta, Plaintiff responded that "if [she] was asked to leave, [she was] not coming back." *Id.*

Kaiser presents a declaration by Craig Tom, who is the current security manager at the facility and held that position in May 2023. Tom states that he regularly receives oral and written incident reports from his security team of disruptions at the facility and that on May 3, 2023, it was reported to him by his security team that Plaintiff's companion became "disruptive . . . after he was asked to check in at the office of admission." Tom Decl. ¶ 4. Tom states that "[s]ecurity was called in response and tried to escort the companion and [Plaintiff] to the check in area. However the companion and [Plaintiff] instead left the facility voluntarily." *Id.* He states further, "It is my understanding there was never any request or instruction to [Plaintiff] to leave the facility." *Id.*

Plaintiff testified at her deposition that she was not charged for the services she received from Kaiser in connection with any of her appointments with Dr. Tabrizi. Likar Decl., Ex. C Ralon Repo.) at 38-39; *see also* dkt. no. 93 at ECF p. 14 (reflecting total Kaiser charges of $21,237.85 and patient payments of $0).

### B. Procedural Background

The operative complaint in this case is the Second Amended Complaint, filed on February 26, 2024. In it, Plaintiff asserts two claims for racial discrimination under Title VI, 42 U.S.C. 2000d: 1) a claim based on the allegation that on March 27, 2023 and May 3, 2023, Kaiser did not have bilingual staff in the "Waiting Room, Anesthesia Room and Surgery Room" of the facility to

7

1   translate between English and Spanish; and 2) a claim that on May 3, 2023, Plaintiff "was rejected
2   and expelled" from the facility by Dr. Tabrizi.

3         As set forth in detail in the Court's March 17, 2025 order granting in part and denying in
4   part Kaiser's motion for issue and evidentiary sanctions, dkt. no. 85 ("Sanctions Order"), Plaintiff
5   repeatedly refused to comply with Kaiser's discovery requests in the fall of 2024 and failed to
6   respond to communications from Kaiser's counsel seeking to meet and confer in connection with
7   Plaintiff's discovery obligations. Plaintiff also issued subpoenas to depose Kaiser and various
8   Kaiser employees that were not in compliance with the Civil Local Rules or the Court's standing
9   orders. Kaiser brought these issues to the Court's attention in a discovery letter dated December
10  12, 2024 and on December 13, 2024, the Court issued an order for Plaintiff to respond to Kaiser's
11  discovery and quashing Plaintiff's subpoenas. Dkt. no. 62 (Order re Kaiser Discovery Letter).
12  The Court provided a detailed explanation of the flaws in Plaintiffs' subpoenas and permitted
13  Plaintiff to renotice the depositions to cure these defects, provided that she first meet and confer
14  with Kaiser's counsel with regard to scheduling of the depositions. *Id.* The Court gave Plaintiff
15  one week to meet and confer with Kaiser's counsel regarding the depositions but Plaintiff did not
16  comply with the Court's order; nor did she renotice any depositions. *See* dkt. nos. 88, 89. Plaintiff
17  also failed to comply with the Court's order requiring her to respond to Kaiser's discovery
18  requests. Dkt. no. 85 (March 17, 2025 Sanctions Order) at 2.

19        On March 17, 2025, the Court granted in part and denied in part Kaiser's motion for
20  sanctions, finding that certain sanctions were necessary to address the prejudice to Kaiser caused
21  by Plaintiff's failure to comply with her discovery obligations and the Court's orders. Pursuant to
22  the Court's Sanctions Order, Plaintiff may not introduce any facts or witnesses that were not
23  expressly disclosed at her deposition or contained in the medical records that Defendants produced
24  to Plaintiff. *See* Sanction Order, pp. 8-9. In addition, Plaintiff may not offer any evidence or
25  testimony from individuals who she did not identify in her deposition. *Id.* at p. 9. Further, except
26  to the extent Plaintiff offered specific testimony at her deposition, the Court deemed admitted the
27  fact that no harm was caused to Plaintiff by any employee in relation to the Title VI claim. *Id.*, p.
28  8. Further, the Court prohibited Plaintiff from introducing evidence or offering testimony relating

1  to any incidents of alleged discrimination (whether based on race or national origin) not described
2  in the operative complaint unless clear and specific testimony relevant to the federal claims was
3  provided during her deposition. *Id.* at pp. 9-10. In addition, Plaintiff may not assert any claims for
4  negligence or medical malpractice. *Id.* at p. 7. The Court also deemed admitted the fact that
5  Kaiser encouraged Plaintiff to continue to see and treat with her Kaiser medical providers. *Id.* at
6  p. 8. Finally, Plaintiff is prohibited from introducing any evidence or testimony as to any
7  economic or non-economic damages not disclosed by Plaintiff in her deposition. *Id.* at p. 11.

8      On March 31, 2025, Plaintiff filed a motion for extension of time, apparently seeking to
9  compel Kaiser to produce two videotapes she believed recorded the events of May 3, 2023 and to
10 extend fact discovery so that she could depose Kaiser witnesses. Dkt. no. 86. As discussed above,
11 the Court denied the motion, finding that it was untimely because the fact discovery cut-off was no
12 later than February 12, 2025. Dkt. no. 89.

13     Although Plaintiff repeated her requests for an order compelling Kaiser to produce
14 videotapes and produce witnesses for deposition in her Discovery Motions, Plaintiff still has not
15 offered any evidence that those videotapes exist. Nor has she offered any explanation for her
16 failure to renotice depositions of Kaiser witnesses under the Court's December 13, 2024 Order.

17     **C.    Legal Standards Under Rule 56**

18     Summary judgment on a claim or defense is appropriate "if the movant shows that there is
19 no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
20 law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show
21 the absence of a genuine issue of material fact with respect to an essential element of the non-
22 moving party's claim, or to a defense on which the non-moving party will bear the burden of
23 persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

24     Once the movant has made this showing, the burden then shifts to the party opposing
25 summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id*.
26 (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely
27 disputed must support the assertion by . . . citing to particular parts of materials in the record
28 . . . ."). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the

9

1  substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v.*
2  *Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). The non-moving party has the burden of
3  identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan*
4  *v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Thus, it is not the task of the court to scour the
5  record in search of a genuine issue of triable fact. *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237
6  F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### D.  Legal Standards Governing Title VI Discrimination Claims

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Ninth Circuit has held that the burden-shifting framework that applies to Title VII discrimination claims under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) also applies to Title VI claims. *Rashdan v. Geissberger*, 764 F.3d 1179, 1182 (9th Cir. 2014). Under that framework, the "allocation of burdens and order of presentation of proof" is as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). Alternatively, a plaintiff may establish discriminatory purpose by producing direct evidence demonstrating that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way. *Ballou v. McElvain*, 29 F.4th 413, 422 (9th

1  Cir. 2022).

### E. Discussion

Because Ralon has not pointed to any direct evidence of discriminatory intent, the question the Court must decide is whether she has established discriminatory intent sufficient to survive summary judgment under the *McDonnell Douglas* framework. The Court finds, as a matter of law, that she has not. In particular, the Court finds based on the undisputed facts and drawing all reasonable inference in favor of Plaintiff where the facts are disputed, that Plaintiff has not offered evidence that gives rise to an inference of discriminatory intent. *See Rashdan v. Geissberger*, 764 F.3d at 1183 (*citing Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219–20 (9th Cir.1998) (internal quotation marks and alteration omitted).

As a preliminary matter, the Court finds that Plaintiff has not made a prima facie case of discrimination based on any conduct or events that occurred at the Kaiser facility on March 27, 2023. Plaintiff testified at her deposition that the surgery performed by Dr. Tabrizi that day went smoothly and that she had no problems entering the facility or any encounters with building security. Likar Decl., Ex. C (Ralon Depo.) at 31. Although Plaintiff testified that she understood that Dr. Tabrizi was going to remove the entire mass that day and believed that Dr. Tabrizi left a "percentage" so that she could charge for a second surgery, she points to no evidence to support her belief, which is entirely speculative. Furthermore, even if Dr. Tabrizi had removed only part of the mass so that she could charge for two surgeries, that would not establish that her conduct was motivated by discriminatory intent. Likewise, the pre- and post-operative visit notes reflect that an interpreter was present during these examinations and consultations and there is no evidence that Plaintiff was treated less favorably than other patients due to her race or ethnicity.

As to the events that occurred on May 3, 2023, the Court assumes that Plaintiff has made a prima facie case of discrimination but need not decide that question because Kaiser has articulated a legitimate, non-discriminatory reason for ejecting her from the facility[3] and Plaintiff has not

---

[3] Kaier contends "[t]he uncontroverted evidence establishes that nobody wanted Plaintiff to leave the facility[.]" Motion at 10. While it has supplied a declaration from the security manager at the facility stating that it was his "understanding there was never any request or instruction to Ms. Pelaez to leave the building[,]" Tom Decl. ¶ 4, that evidence is controverted by Plaintiff's

11

1  pointed to evidence establishing pretext. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th
2  Cir. 2010). Specifically, Kaiser asserts that what occurred on May 3 was the result of Villalta
3  becoming disruptive, causing facility employees to escort him and Plaintiff out of the building.
4  Although Kaiser has offered no direct eyewitness testimony providing details about Villalta's
5  conduct or evidence establishing who exactly decided how his conduct should be handled, it has
6  offered testimony from the security manager stating that it was reported to him by member of his
7  security team that a security escort was called in response to Villalta's "disruptive behavior." *See*
8  *generally* Tom Decl.[4]  Similarly, Dr. Tabrizi wrote in her case notes that day that Plaintiff left the
9  facility "after a confrontation with Selomi and our peri-op staff." Aguiar Decl., Ex. A,
10 KFH.PR.001435.

11       As discussed above, Kaiser's burden is only to *articulate* a non-discriminatory reason for
12 its conduct. Kaiser has done that. The burden of showing discriminatory intent always lies with the
13 plaintiff, and to show pretext Plaintiff must provide "specific, substantial evidence." *Wallis v. J.R.*
14 *Simplot Co.*, 26 F.3d 885, 890 (9th Cir.1994) (internal quotations and citation omitted).  "The
15 plaintiff may show pretext either (1) by showing that unlawful discrimination more likely
16 motivated the [defendant], or (2) by showing that the [defendant's] proffered explanation is
17 unworthy of credence because it is inconsistent or otherwise not believable." *Dominguez-Curry v.*
18 *Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005) (citing *Godwin v. Hunt Wesson, Inc.*,
19 150 F.3d 1217, 1220-22 (9th Cir. 1998), as amended (Aug. 11, 1998)).  Plaintiff has met neither
20 test.

21       Plaintiff testified that the ER nurse was Black and speculated that she "kicked me out of

---

testimony that a security guard escorted her and Mr. Villalta "all the way to the street." Likar Dec., Ex. C (Ralon Depo.) at 54.  Drawing all reasonable inferences in favor of Plaintiff, this testimony is sufficient to support an inference that Plaintiff was, in fact, asked to leave the facility and the Court presumes this to be true in its analysis.

[4]Although the description in the Tom Declaration of what occurred at the facility on May 3 is likely inadmissible hearsay, *see* Fed.R.Evid. 801(c), a party need not present evidence to support or oppose a motion for summary judgment in a form that would be admissible at trial so long as the contents of the parties' evidence is amenable to presentation in an admissible form. *See Fraser v. Goodale*, 342 F.3d 1032, 1036−37 (9th Cir. 2003). As the Tom Declaration indicates that Kaiser can present admissible evidence at trial in the form of testimony from the security officer who reported to Tom about the events of that day, the Court may consider it for the purposes of ruling on Kaiser's summary judgment motion.

there maybe because I'm Latina," Likar Decl., Ex. C (Ralon Depo.) at 48, but the fact that the ER nurse was Black is not sufficient to raise an inference of discriminatory intent; rather, Plaintiff's assertion that the ER nurse asked Plaintiff to leave because of her race is entirely speculative and is insufficient to establish pretext. *See Dasilva-Flint v. Dejoy*, No. SACV1902018CJCADSX, 2022 WL 1127473, at *4 (C.D. Cal. Feb. 16, 2022), aff'd, No. 22-55382, 2023 WL 4676819 (9th Cir. July 21, 2023) (holding that plaintiff could not "rely on speculation as to [the defendant's] motive to establish pretext) (citations omitted). Likewise, Plaintiff's testimony that "[e]veryone else was American[,]" *see id.*, has no probative value because "American" describes neither a race nor an ethnicity.

Even assuming that Plaintiff meant to testify that all of the other people in the waiting area were non-Hispanic, she has not established that any of them were similarly situated to her because there is no evidence that anyone else was accompanied by a companion who became disruptive. Therefore, this evidence would not constitute specific or substantial evidence of pretext. *See Williams v. Wendler*, 530 F.3d 584, 588–89 (7th Cir. 2008) ("[I]n a very small sample of dissimilar cases, the presence of a racial difference does not permit an inference of discrimination; there are too many other differences, and in so small a sample no basis for thinking they cancel out.").

Plaintiff also testified that she never saw Villalta acting disruptive while at the facility on May 3, but this is not specific evidence that establishes that Kaiser's explanation is unworthy of credence because Plaintiff also testified that Villalta left her in the ER waiting room as soon as they arrived and went to another location to complete paperwork; she also testified that she did not witness Villalta's interactions with the ER nurse. Likar Decl., Ex. C (Ralon Depo.) at 51-53.

Finally, Plaintiff testified that she believed Dr. Tabrizi ordered her removal, apparently based on her race. But it is undisputed that Dr. Tabrizi was not present in the ER waiting room and did not witness any of the events related to the removal of Villalta and Plaintiff. It is also undisputed that Dr. Tabrizi called Plaintiff the same morning and asked her to return to the facility for her scheduled surgery; and Dr. Tabrizi's treatment notes offer no support for Plaintiff's theory. Again, Plaintiff offers only speculation in support of her assertion that Dr. Tabrizi was responsible

13

1  for her removal. There is no evidence that Dr. Tabrizi was involved in any way in Plaintiff's
2  removal from the facility on May 3, 2023, much less that Dr. Tabrizi was motivated by
3  discriminatory intent.
4      In sum, the Court concludes that Plaintiff has failed, as a matter of law, to establish that
5  Kaiser discriminated against her in violation of Title VI on the basis of race or ethnicity.
6  Therefore, Kaiser is entitled to summary judgment in its favor on all of Plaintiff's claims.

## VI.  CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion for appointment of counsel, Discovery Motions and Bench Trial Motion. The Court GRANTS Defendants' Summary Judgment Motion. The Clerk is instructed to enter judgment in favor of Kaiser and close the case.

**IT IS SO ORDERED.**

Dated: October 23, 2025

_____
JOSEPH C. SPERO
United States Magistrate Judge

14